UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH DIGIACINTO,<br><br>Plaintiff,<br><br>v.<br><br>RB HEALTH (US) LLC,<br><br>Defendant. | Case No. 22-cv-04690-DMR<br><br>**ORDER ON MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 32 |

Plaintiff Joseph DiGiacinto filed this putative class action against Defendant RB Health (US) LLC ("RB Health") alleging false, misleading, and deceptive marketing practices with respect to the labeling of its "Children's Delsym Cough Relief" product. RB Health moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the first amended complaint. [Docket No. 32.] This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, the motion is denied.

I.  **BACKGROUND**

Plaintiffs make the following allegations in the amended complaint, all of which are taken as true for purposes of the motion to dismiss.[1] RB Health makes, labels, distributes, sells, and markets two separate Delsym Cough Relief products: one advertised and marketed for adults, "Delsym Cough Relief" (the "adults' product"), and one marketed and advertised for children, "Children's Delsym Cough Relief" (the "children's product"). [Docket No. 24 (First Am. Class Action Complaint, "FAC") ¶¶ 1, 10.] The front of the packaging for the children's product contains a cartoon image of a child. It states "Ages 4+" at the top of the package and "For

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

1  Children & Adults" at the bottom.  The front of the packaging for the adults' product contains no
2  statement about the suitability of the product for any ages.  The front of the packaging for both
3  products is reproduced below.

 

FAC ¶ 13.

The side labels for both products contain an identical dosing chart that includes dosing amounts for children and adults along with the statement "Dosing Cup Included" below an image of a cup containing liquid.  *Id*. at ¶ 14.  The "Drug Facts" labels on the back of the packaging for both products are identical.  Both products contain the same amount of the active ingredient, dextromethorphan polistirex equivalent to 30 mg dextromethorphan hydrobromide, and the same inactive ingredients.  *Id*. at ¶¶ 15-20.

DiGiacinto alleges that RB Health "created and marketed one Product as specially formulated for children and that Product was sold at a premium," even though both products are identical in terms of the "form and quantity" of ingredients.  *Id*. at ¶ 15.

DiGiacinto alleges that the labeling on the front of both products' packaging is misleading because "reasonable consumers believe that there is something different about the adults' Delsym Cough Relief product and the Children's Delsym Cough Relief product that makes the Children's

Product better suited or more appropriate for children." *Id*. at ¶ 21. However, "[t]he Children's Delsym Cough Relief product is not specially formulated for children" and is "identical to the adult's Delsym Cough Relief product," but RB Health and retailers charge more for the children's product. *Id*. at ¶¶ 24-26. He alleges that "[i]n short, [RB Health] tricks consumers into thinking they are buying cough relief product specially formulated for children, when in reality, consumers are just buying [RB Health's] cough relief product for adults in a different packaging marketed for children." *Id*. at ¶ 26. DiGiacinto further alleges that "[c]onsumers buy the Children's Delsym Product based on the belief that it is specially formulated for children and is safer for children to consume" and that "[n]o reasonable consumer who understood that the Children's Delsym Cough Relief product was formulated identically to the adult's Delsym Cough Relief product would choose to pay more for it." *Id*. at ¶¶ 27, 28.

DiGiacinto alleges that he purchased the children's product "several times throughout the class period . . . in reliance on the Product's claims that the Product was formulated specifically for children." DiGiacinto "read and relied on the advertisement that the Children's Delsym Cough Relief product was 'for children,' as well as the additional children-specific representations, which appear directly on the front label of the Product's label and packaging." *Id*. at ¶¶ 29, 30. Based on these representations, DiGiacinto "believed that the Product was specially formulated for children and bought it specifically for this reason." *Id*. at ¶ 31. He alleges that he would not have bought the children's product had he known that it was identical to the adults' product, and that he "paid a premium for [the children's product] due to the misleading labelling on [its] packaging." *Id*. at ¶ 32. Had he known the truth, he alleges, he "could have purchased the same Product for less per ounce than [he] paid." *Id*.

Based on these allegations, DiGiacinto asserts the following claims for relief: 1) violation of the Unfair Competition Law ("UCL"), California Business & Professions Code section 17200 et seq.; 2) violation of the False Advertising Law ("FAL), California Business & Professions Code section 17500 et seq.; 3) violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1750 et seq.; 4) breach of express warranties under California Commercial Code section 2313(a); 5) breach of implied warranties under California Commercial Code section

3

2314; 6) negligent misrepresentation; 7) intentional misrepresentation/fraud; and 8) quasi-contract/unjust enrichment.

DiGiacinto seeks to represent a nationwide class of allegedly similarly situated persons, defined as:

> All U.S. citizens who purchased the Product in their respective state of citizenship for personal and household use and not for resale during the Class Period.

FAC ¶ 45. He also seeks to represent the following California subclass:

> All California citizens who purchased the Product in California for personal and household use and not for resale during the Class Period.

*Id*. DiGiacinto brings claims one through three on behalf of himself and the California subclass. He brings claims four through eight on behalf of himself, the nationwide class, and the California subclass.

RB Health now moves to dismiss the FAC.

## II. LEGAL STANDARDS

RB Health moves to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### A. Rule 12(b)(1)

The question of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III [of the U.S. Constitution]." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). Because standing is a jurisdictional issue, it is properly addressed under a Rule 12(b)(1) motion. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1). The challenging party may make a facial or factual attack challenging subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal

4

jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In contrast, a factual attack disputes "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. at 1039. A factual challenge permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *White*, 227 F.3d at 1242 (citation omitted). Even the presence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

**B.** **Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which

5

1   are not physically attached to the pleading," without converting a motion to dismiss under Rule
2   12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.
3   1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26. The court need not accept
4   as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr.*
5   *Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### III. DISCUSSION

RB Health argues that the FAC fails to state a claim under Rule 12(b)(6). It also asserts that DiGiacinto lacks Article III standing to pursue his claims. As Article III standing is a jurisdictional issue, the court must first address that argument before reaching the merits of any 12(b)(6) challenges to the sufficiency of pleading. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

**A. Standing**

**1. Causation**

RB Health argues that DiGiacinto cannot establish Article III standing because he has not alleged a causal nexus between his alleged harm and RB Health's conduct.

Article III standing requires three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). As the party asserting federal jurisdiction, DiGiacinto bears the burden of establishing these elements. *Id*. at 561.

The parties dispute whether DiGiacinto has alleged causation; injury in fact and redressability are not at issue. To establish "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (internal quotation marks and citation omitted).

According to RB Health, DiGiacinto's "claimed injury" is as follows:

> Plaintiff would not have purchased [Children's Delsym Cough

> Relief] if Plaintiff had known that the Product was, in fact, identical to Delsym Cough Relief product marketed for adults, which costs less than the Children's Delsym Cough Relief product. Plaintiff paid a premium for this Product due to the misleading labelling on the Product's packaging. Had Plaintiff known the truth, Plaintiff could have purchased the same Product for less per ounce than Plaintiff paid.

Mot. 7 (quoting FAC ¶ 32). RB Health submits a declaration by its Trade Marketing Director James Hunt, who states that RB Health does not sell the Delsym Cough Relief and Children's Delsym Cough Relief products "directly to consumers, but, instead, sells the Products to retailers and to distributors who in turn sell to retailers." [Docket No. 26-2 (Hunt Decl. Nov. 16, 2022) ¶ 2.] According to Hunt, since 2018, RB Health has sold both products "to the same distributors and retailers at the same price. The price the consumer pays for the Products is not set by RB Health." *Id.* at ¶¶ 3, 4. Based on this evidence, RB Health argues that DiGiacinto's "alleged harm is the result of legally and factually independent pricing decisions by third parties and cannot be attributed to actions by RB Health." Mot. 7. Therefore, it argues, DiGiacinto has not established causation between his injury and RB Health's actions and lacks standing to bring this action.

"To survive a motion to dismiss for lack of constitutional standing, plaintiffs must establish a line of causation between defendants' action and their alleged harm that is more than attenuated." *Maya v. Centex*, 658 F.3d 1060, 1070 (9th Cir. 2011) (quotation marks and citation omitted). This does not "require plaintiffs to demonstrate that defendants' actions are the 'proximate cause' of plaintiffs' injuries. Plaintiffs do not bear so heavy a burden." *Id.* Here, DiGiacinto has adequately pleaded the requisite "line of causation" that is "more than attenuated" between the harm he suffered and RB Health's actions. Specifically, DiGiacinto alleges that the packaging of the children's product is deceptive because it leads reasonable consumers to believe that the product is specially formulated for children even though it is identical to the adults' product and that RB Health makes, labels, and markets the products at issue. He further alleges that he purchased the children's product based on his belief that it was "specially formulated for children" and that he would not have bought the children's product had he known that it was identical to the adults' product. FAC ¶¶ 10, 11, 21, 23, 30-32. RB Health argues that Plaintiff's injury was caused solely by the retailers' pricing decision; it emphasizes DeGiacinto's allegation

7

that he "paid a premium" for the children's product and "could have purchased the same Product for less per ounce than [he] paid." *See id.* at ¶ 34. To begin with, this argument ignores the allegation that DiGiacinto was induced to purchase the product by RB Health's allegedly misleading representations on the packaging. *Id.* Moreover, the difference in price between the children's product and the adults' product for which third parties may be responsible is just one measure of "the economic injury suffered *as a result* of Defendant's misleading advertising." *See* Opp'n 5 (emphasis in original); *see* FAC ¶ 38 ("Plaintiff paid more for the [children's] Product, and would only have been willing to pay less, *or unwilling to purchase it at all*, absent the false and misleading statements complained of herein." (emphasis added)). "A causation chain does not fail simply because it has several links, provided those links are not hypothetical or tenuous and remain plausible." *Maya*, 658 F.3d at 1070 (cleaned up). The court finds that the FAC alleges a plausible, non-hypothetical causation chain between RB Health's allegedly misleading packaging and DiGiacinto's injury. Accordingly, DiGiacinto has established causation for purposes of pleading Article III standing.[2]

### 2. Risk of Future Harm

DiGiacinto seeks injunctive relief in connection with his UCL, FAL, and CLRA claims. RB Health argues that DiGiacinto lacks standing to seek injunctive relief because he "is now aware that Children's Delsym Cough Relief and Delsym Cough Relief are pharmacologically identical" and can read the labels on the products in the future, which he concedes disclose that the products are pharmacologically identical. Mot. 7-8.

"A plaintiff must demonstrate constitutional standing separately for each form of relief sought." *Davidson v. Kimberly Clark*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000)). A plaintiff seeking

---

[2] DiGiacinto argues in his opposition that "whether or not Defendant sets the products' retail pricing is irrelevant to" his claims and legal theory, and that RB Health's standing argument "was rejected in" *Burchfield v. Prestige Consumer Healthcare, Inc.*, 534 F. Supp. 3d 1192, 1202-03 (C.D. Cal. 2021). Opp'n 5. Not so. The *Burchfield* defendant argued that the plaintiffs failed to state claims based on misleading product labels because their "claims come down to a dissatisfaction with the price of" a product marketed for infants. *Id.* at 1202. It made a separate standing argument that had nothing to do with pricing. *Id.* at 1206.

injunctive relief must demonstrate a "real or immediate threat that they will be wronged again—a likelihood of substantial and immediate irreparable injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1982) (quotation omitted). "[T]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Id.* at 102 (citations omitted). "A plaintiff threatened with future injury has standing to sue 'if the threatened injury is certainly impending, or there is a substantial risk the harm will occur.'" *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (quotation marks omitted) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013))).

The FAC alleges that DiGiacinto "would like to, and would consider, purchasing the [children's] Product again when he can do so with the assurance that the Product's label is truthful and consistent with the Product's ingredients," and that he "will be unable to rely on the Product's advertising and labeling in the future, and so will not purchase the Product again although he would like to." FAC ¶¶ 40, 41. He argues that these allegations are sufficient to confer standing to pursue injunctive relief under *Davidson*. Opp'n 6.

In *Davidson*, the plaintiff brought FAL, CLRA, UCL, and fraud claims against the manufacturer of pre-moistened wipes. The manufacturer labeled and marketed the wipes as "flushable," meaning "suitable for being flushed [down a toilet]," and the plaintiff paid a premium for the "flushable" wipes, as compared to non-flushable wipes. 889 F.3d at 961, 964. The plaintiff later learned that the products were not truly "flushable." *Id.* at 962. The district court dismissed the injunctive relief claim, finding that the plaintiff lacked standing because she had no intention of purchasing the same product in the future and therefore had no risk of future injury. *Id.* at 963, 967.

The Ninth Circuit reversed, finding that the plaintiff had "properly alleged that she faces a threat of imminent or actual harm by not being able to rely on [the defendant's] labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief." *Id.* at 967. The court recognized that its decision resolved a district court split regarding the extent to which "a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek

1  injunctive relief," resolving the split "in favor of plaintiffs seeking injunctive relief." *Id.* at 967-
2  69. *Davidson* held that plaintiffs have standing to pursue injunctive relief in at least two
3  circumstances:

> In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Id.* at 969-70 (citations omitted).  The plaintiff in *Davidson* alleged that she continued to desire to purchase wipes suitable for disposal in a toilet, would purchase "truly flushable wipes" manufactured by the defendant if it were possible, and was continually presented with the defendant's flushable wipes packaging, but had "no way of determining whether the representation 'flushable' [was] in fact true." *Id.* at 970-71.  The Ninth Circuit found these allegations sufficient for standing purposes:

> We therefore hold that Davidson's allegation that she has no way of determining whether the representation "flushable" is in fact true when she regularly visits stores . . . where Defendants' "flushable" wipes are sold constitutes a threatened injury [that is] certainly impending, thereby establishing Article III standing to assert a claim for injunctive relief.

*Id.* at 972 (citation and internal quotation marks omitted).

Here, the FAC alleges that the packaging of the children's product is misleading because it "tricks consumers into thinking they are buying cough relief product specially formulated for children."  *See* FAC ¶ 26.  Like the plaintiff in *Davidson*, DiGiacinto has sufficiently alleged that he will be unable to rely on the advertising or labeling of the children's product in the future.  This is because DiGiacinto cannot discover whether RB Health's misrepresentations have been cured simply by looking at the children's product front label since it does not disclose that it is pharmacologically identical to the adults' product.  Instead, he would have to inspect and compare the ingredient labels on two separate products, including the active and inactive ingredients listed, to determine whether the products are identical in form and quantity.  *See* FAC ¶¶ 18-20.  The

10

1    Ninth Circuit has held that "reasonable consumers" should not "be expected to look beyond
2    misleading representations on the front of [packaging] to discover the truth from the ingredient list
3    in small print on the side of the [packaging]," *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939
4    (9th Cir. 2008), and RB Health does not cite any cases holding that a reasonable consumer is
5    expected to compare labels on more than one product in order to determine whether a label is
6    accurate. The allegations in the FAC are sufficient as a matter of pleading to confer standing to
7    seek injunctive relief because DiGiacinto alleges that he will not be able to trust RB Health's
8    claims about the children's product in the future. *See Davidson*, 889 F.3d at 972. The court
9    concludes that DiGiacinto has sufficiently alleged standing to seek injunctive relief.

   **B.    Sufficiency of the FAC**

   **1.    UCL, FAL, and CLRA Claims**

12   RB Health argues that DiGiacinto's UCL, FAL, and CLRA claims must be dismissed
13   because the FAC does not plausibly allege that the packaging and labeling of the children's
14   product would mislead a reasonable consumer. Mot. 9.
15   False advertising claims under the CLRA, FAL, and the fraudulent prong of the UCL are
16   governed by the reasonable consumer standard. *Williams*, 552 F.3d at 938; *Freeman v. Time, Inc.*,
17   68 F.3d 285, 289 (9th Cir. 1995) (courts must evaluate whether a label is misleading "from the
18   vantage of a reasonable consumer" (quotation omitted)). Under the reasonable consumer standard,
19   a plaintiff must show that members of the public are likely to be deceived. *Id*. (citation omitted).
20   "This requires more than a mere possibility that [a defendant's] label might conceivably be
21   misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh,*
22   *Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quotation omitted). "Rather, the reasonable consumer
23   standard requires a probability that a significant portion of the general consuming public or of
24   targeted consumers, acting reasonably in the circumstances, could be misled." *Id*. (quotation
25   omitted). "[T]he primary evidence in a false advertising case is the advertising itself." *Williams*,
26   552 F.3d at 938 (quoting *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003). The question of
27   whether a business practice is deceptive is generally a question of fact not amenable to
28   determination on a motion to dismiss. *Williams*, 552 F.3d at 938. Dismissal is appropriate where

1    it is "impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived."
2    *Id*. at 939.
3       DiGiacinto alleges that reasonable consumers are likely to be deceived into believing that
4    the children's product is "better suited or more appropriate for children" than the adults' product
5    based on the labeling on the front of the packaging for the children's product. FAC ¶ 21.
6    According to DiGiacinto, the children's product's packaging leads a reasonable consumer to
7    believe there is a difference between the products because it has an image of a cartoon child and
8    the word "children" written on the front label. *Id*. at ¶ 13. In comparison, the front of the
9    packaging for the adults' product does not contain an image of a child or the word "children." *Id*.
10   at ¶¶ 1, 13. Further, the packaging does not disclose that "the Children's Product is simply the
11   Adult's Product sold at a higher price," i.e., that the products are identical. *Id*. at ¶ 22.
12      RB Health argues that the FAC does not identify any representation or omission on the
13   packaging of the children's product that could lead a reasonable consumer to believe that it is
14   "specially formulated" for children. It contends that the court in *Boris v. Wal-Mart Stores, Inc.*, 35
15   F. Supp. 3d 1163, 1168 (C.D. Cal. 2014), "addressed the exact issue presented here." *Id*. at 10.
16   *Boris* is distinguishable. In *Boris*, the plaintiffs alleged that a retailer "deceptively market[ed]" an
17   over-the-counter migraine medicine. They alleged that Equate Migraine and Equate Extra
18   Strength Headache Relief ("Equate ES") contained the same active ingredients in the same
19   amounts but that the defendant retailer charged two to three times more for Equate Migraine than
20   Equate ES. Additionally, Equate Migraine's packaging had a red background instead of Equate
21   ES's green background. 35 F. Supp. 3d at 1166. The plaintiffs expressly asserted that the
22   packaging for the two products did not contain any affirmative misrepresentations. Instead, the
23   "gravamen" of their claim was that Defendant deceived Plaintiffs by "charging more for Equate
24   Migraine and using the color red on its packaging." *Id.* at 1168. After noting that the plaintiffs
25   did not allege that the packaging for either product "contained any affirmative
26   misrepresentations," the court dismissed with prejudice the plaintiffs' deception claims under the
27   FAL, CLRA, and UCL's unlawful prong based on Equate Migraine's price and red packaging for
28   failure to allege "some statement or representation by the defendant about the product." *Id*. at

United States District Court
Northern District of California

1168-70. In contrast, DiGiacinto does not contend that the price of the children's product "is the source of [RB Health's] deception"; rather, he alleges that statements and images on the children's product packaging are misleading. *See, e.g., Burchfield v. Prestige Consumer Healthcare, Inc.*, 534 F. Supp. 3d 1192, 1203 (C.D. Cal. 2021) (rejecting defendant's argument that plaintiffs' claims amounted to a non-justiciable challenge to retailer's pricing decisions; "[u]nlike in *Boris*, Plaintiffs here 'are not contending that the price is the source of [defendant's] deception.'" (quoting *Youngblood v. CVS Pharmacy*, No. 2:20-CV-06251-MCS-MRW, 2020 WL 8991698, at *3 (C.D. Cal. Oct. 15, 2020))).

RB Health next asserts that "[j]udges in this District have consistently rejected claims like the one presented by Plaintiff," citing *Lokey v. CVS Pharmacy, Inc.*, No. 20-CV-04782-LB, 2021 WL 633808, at *4 (N.D. Cal. Feb. 18, 2021), *appeal dismissed,* No. 21-15475, 2021 WL 2456822 (9th Cir. May 21, 2021); *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 645 (N.D. Cal. 2021), *appeal dismissed,* No. 21-15659, 2021 WL 4785889 (9th Cir. May 17, 2021); and *Frost v. Safeway*, No. 21-cv-02137-SK, Order Granting Motion to Dismiss (Docket No. 24) (N.D. Cal. July 19, 2021). In each of those cases, the plaintiffs challenged as deceptive acetaminophen products marketed for infants that were "identical compositionally" to acetaminophen products marketed for children but priced higher than the children's products. *See Lokey*, 2021 WL 633808, at *1-2; *Eidmann*, 522 F. Supp. 3d at 639-40; *Frost*, Order Granting Motion to Dismiss at 2-4. The courts found that the packaging of the infants' products at issue was not deceptive as a matter of law in part because the front labels for each set of products expressly stated the acetaminophen concentration information. *See Lokey*, 2021 WL 633808, at *4 ("the labels are not deceptive. The front labels for both products show their concentrations of 160 milligrams per 5 milliliters (the 160 mg/5 ml reflected on the labels) . . . nothing about the labels is misleading about the products or their composition. To the contrary, the labels are accurate."); *Eidmann*, 522 F. Supp. 3d at 645 ("[n]o reasonable consumer would understand Infants' Product to be specially formulated, in light of the numerous express statements [on the front label] regarding the acetaminophen concentration, overlapping age ranges, and the infant-specific dosing mechanism."); *Frost*, Order Granting Motion to Dismiss at 9 ("in light of the clear statements on

the [front of the] packages regarding the active ingredient and dosage instructions, the mere fact that one is called 'Infants' and one is called 'Children's' is insufficient to deceive customers into thinking that the Infant Product is formulated differently or contains a different active ingredient than the Children's Product."). Thus, as the court in *Lokey* observed, "Defendant tells the consumer exactly what she is getting: the [front of the] package actually discloses the fact that Plaintiff complains it omits." *Lokey*, 2021 WL 633808, at *5 (quoting *Dinan v. Sandisk LLC*, No. 18-CV-05420-BLF, 2019 WL 2327923, at *7 (N.D. Cal. May 31, 2019)).

*Lokey*, *Eidmann*, and *Frost* are distinguishable because in this case, the front of the packaging of both the children's and the adults' products identifies the active ingredient dextromethorphan polistirex but not its concentration. *See* FAC ¶ 13. The concentration information appears only on the back of the packaging in the ingredient lists. *Id*. at ¶ 16. *See, e.g., Elkies v. Johnson & Johnson Servs., Inc*., No. 17-cv-07320-GW, 2018 WL 11328613, at *5 (C.D. Cal. Feb. 22, 2018) ("[a] picture of mother-and-baby, along with the word 'Infants,' but without any express disclosure that the medicine in the bottle is exactly the same, and provided at the exact same concentration, as Children's, could lead a significant portion of the general consuming public . . . to conclude that Infants' is unique or specially formulated for children under two.").

RB Health also argues that the labels of the products "reveal that the Products are exactly the same." Mot. 9. First, it claims that the front of the packaging for both products "conspicuously disclose, in the *same* area on the front labels, the *same* concentration of dextromethorphan polistirex." Mot. 9 (emphasis in original). Not so. As noted above, the front of the packaging for both products do not state the concentration of the active ingredient. This information appears only on the back of the packaging. Next, RB Health notes that the children's product states on the front of the packaging that it is for "Ages 4+" and "For Children and Adults," "thus disclosing (not concealing) that both Products can be used by anyone over four years of age." *Id*. It also asserts that both products include identical dosage charts and ingredient lists "that convey to consumers that the Products can be used by anyone above four years of age." *Id*. at 9-10. RB Health's argument is not persuasive. While the front of the children's product discloses that it can be used for anyone over four years of age ("Ages 4+"), the front label of the

14

adults' product is silent as to age. This could lead a reasonable consumer to believe that the adults' product is not suitable for children to consume and to purchase the children's product instead. *See* Opp'n 11. As to the identical dosage charts and ingredient lists, reasonable consumers should not "be expected to look beyond misleading representations on the front of [packaging] to discover the truth from the ingredient list in small print on the side of the [packaging]." *Williams*, 552 F.3d at 939; *see also Balser v. Hain Celestial Grp., Inc*., 640 Fed. Appx. 694, 696 (9th Cir. 2016) ("an ingredient list does not correct, as a matter of law, misrepresentations on the product's label. Rather, the likely impact of such a list on a reasonable consumer is a factual issue, not determinable on the pleadings.").

Ultimately, the court must take the FAC's allegations about the packaging of the children's product as true and construe all reasonable inferences in DiGiacinto's favor. The court concludes that the FAC plausibly alleges that the packaging of the children's product, which contains the word "children" and a cartoon of a child but no express disclosure that the medicine in the bottle contains the same concentration of the active ingredient as the adult's product, could mislead a reasonable consumer into believing that the children's product is specially formulated for children. Accordingly, the motion to dismiss the UCL, FAL, and CLRA claims is denied.

### 2. Breach of Express Warranties Claim

RB Health moves to dismiss the breach of express warranties claim, arguing that DiGiacinto "has not identified any material statement about the Products that is inaccurate, nor has he pointed to any unfulfilled promises on the Products' labels." Mot. 15. It argues that the children's product states that it is suitable for "Ages 4+" and is "For Children & Adults" on the front of the packaging and that information on the side and back of the packaging conveys to consumers that the product can be used by anyone above four years old. Therefore, it argues, the FAC fails to state a claim for breach of express warranties. *Id*. Notably, RB Health does not set forth the language of California Commercial Code section 2313 or discuss the elements of a claim under that statute.

"[T]o prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2)

the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (internal quotation marks and citation omitted). "[C]ourts in this district regularly hold that stating a claim under California consumer protection statutes is sufficient to state a claim for express warranty" under California Commercial Code section 2313. *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1095 (N.D. Cal. 2017) (citing *Tsan v. Seventh Generation, Inc.*, No. 15-cv-00205-JST, 2015 WL 6694104, at *7 (N.D. Cal. Nov. 3, 2015) (finding that allegations about products' labels that plausibly met the reasonable consumer standard were sufficient to state a claim for breach of express warranty under California law)). DiGiacinto alleges that the use of the word "children" and the image of a cartoon child on the front of the children's product's packaging lead reasonable consumers to believe that the children's product is specially formulated for children, even though it is identical to the adults' product. As the court has already found that these allegations "are sufficient to state a claim under the reasonable consumer standard, they are likewise sufficient to state a claim for breach of express warranty." *LeGrand v. Abbott Lab'ys*, No. 22-CV-05815-TSH, 2023 WL 1819159, at *13 (N.D. Cal. Feb. 8, 2023) (quoting *Cooper v. Curallux LLC*, No. 20-cv-02455-PJH, 2020 WL 4732193, at *7 (N.D. Cal. Aug. 14, 2020)). RB Health's motion to dismiss the express warranty claim is denied.

### 3. Breach of Implied Warranties Claim

RB Health moves to dismiss the breach of implied warranties claim on the ground that "the Products are fit for their ordinary use and conform to any promises or affirmations included on the labels." Mot. 15. Further, it contends that the FAC does not allege that the products are not fit for their purpose as cough medicine for anyone over the age of four. *Id*. at 16. RB Health does not set forth the language of California Commercial Code section 2314 or the elements of a claim under that statute.

DiGiacinto responds that his claim is based on the children's product's failure to conform to promises or affirmations of fact on the labels; specifically, that the product was specially formulated for children. Opp'n 19; *see* FAC ¶¶ 103, 106. "The implied warranty of merchantability can be violated on a number of bases, such as that the product is not 'fit for the

16

1  ordinary purposes for which such good [is] used,' or that it does not '[c]onform to the promises or
2  affirmations of fact made on the container or label if any.'" *LeGrand*, 2023 WL 1819159, at *14
3  (quoting Cal. Com. Code § 2314(2)). Accordingly, DiGiacinto "does not have to allege that the
4  [challenged product is] unfit for [its purpose] in order to make out an implied warranty of
5  merchantability claim." *Id*. Further, "[w]hen an implied warranty of merchantability cause of
6  action is based solely on whether the product in dispute '[c]onforms to the promises or
7  affirmations of fact' on the packaging of the product, the implied warranty of merchantability
8  claim rises and falls with express warranty claims brought for the same product." *Hadley*, 273 F.
9  Supp. 3d at 1096. Therefore, since the breach of express warranties claim is sufficiently pleaded,
10 the court denies the motion to dismiss the breach of implied warranties claim.

### 4. Negligent Misrepresentation Claim

12 RB Health moves to dismiss the negligent misrepresentation claim on the ground that it is
13 barred by the economic loss rule.
14 "The California Supreme Court has recognized that '[t]he economic loss rule requires a
15 purchaser to recover in contract for purely economic loss due to disappointed expectations, unless
16 he can demonstrate harm above and beyond a broken contractual promise.'" *In re Safeway Tuna*
17 *Cases*, No. 15-CV-05078-EMC, 2016 WL 3743364, at *2 (N.D. Cal. July 13, 2016) (quoting
18 *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)). "Thus, if a purchaser
19 seeks damages for economic loss, without any claim of personal injury or damages to other
20 property, he must recover in contract." *Id*. (dismissing negligent misrepresentation claim based on
21 claim that tuna cans were underfilled and underweight where the plaintiffs alleged only economic
22 loss damages). In short, "the economic loss rule prevent[s] the law of contract and the law of tort
23 from dissolving one into the other." *Robinson Helicopter*, 34 Cal. 4th at 988 (internal quotation
24 omitted).
25 DiGiacinto does not dispute that he seeks only monetary damages but contends that the
26 economic loss rule does not apply to claims of negligent misrepresentation that are grounded in
27 fraud. Opp'n 20; *see Hannibal Pictures, Inc. v. Sonja Prods. LLC*, 432 F. App'x 700, 701 (9th
28 Cir. 2011) (noting that "[t]he California Supreme Court has declined to apply the economic loss

United States District Court
Northern District of California

rule to fraud and misrepresentation claims where, as here, one party has lied to the other." (citing *Robinson Helicopter*, 34 Cal. 4th at 992-93)).

District courts in the Ninth Circuit are split on the issue of whether the economic loss rule bars negligent misrepresentation claims. *See Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2017 WL 3838453, at *9 (N.D. Cal. Sept. 1, 2017) (discussing split at length). However, the Ninth Circuit has held "that California law classifies negligent misrepresentation as a species of fraud for which economic loss is recoverable." *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 Fed. App'x. 603, 607 (9th Cir. 2008) (citing *Robinson Helicopter*, 34 Cal. 4th at 991). Based on that Circuit opinion, the court denies RB Health's motion to dismiss the negligent misrepresentation claim. *See Broomfield*, 2017 WL 3838453, at *9 (denying motion to dismiss negligent misrepresentation claim based on economic loss rule, relying on *Kalitta Air*); *Gregorio v. Clorox Co.*, No. 17-CV-03824-PJH, 2018 WL 732673, at *5 (N.D. Cal. Feb. 6, 2018) (same).

### 5. Intentional Misrepresentation/Fraud Claim

RB Health moves to dismiss the intentional misrepresentation/fraud claim on the ground that the packaging of the children's product "cannot be found to mislead the reasonable consumer." Mot. 16. As discussed above, the court has found that the FAC plausibly alleges that the packaging of the children's product could mislead a reasonable consumer into believing that the children's product is specially formulated for children.

RB Health also argues that the FAC does not allege that "RB Health acted with the requisite intent to deceive." *Id*. at 17. The elements of a claim for intentional misrepresentation/fraud are: (1) a misrepresentation or omission of a fact that should have been disclosed; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (4) resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). The FAC adequately alleges these elements. It alleges that the packaging of the children's product is false and misleading, as set forth above; that RB Health knew that its packaging was false and misleading; that RB Health intended to induce consumers to purchase the product at a premium price; that DiGiacinto and the putative class members justifiably relied on the packaging in concluding that

the children's product was specially formulated for children; and that DiGiacinto and the putative class members were damaged. *See* FAC ¶¶ 118-124.[3] Accordingly, the motion to dismiss the intentional misrepresentation/fraud claim is denied.

#### 6. Unjust Enrichment Claim

Finally, RB Health moves to dismiss the claim for unjust enrichment. "[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citations omitted). "When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Id*. (quotation marks and citation omitted).

Here, the FAC alleges that RB Health's "false and misleading labelling caused" DiGiacinto and the putative class members to purchase the children's product at a premium and that RB Health "received a direct and unjust benefit" at their expense. FAC ¶¶ 128-129. These allegations are sufficient to state a quasi-contract claim for relief. *See Astiana*, 783 F.3d at 762. Accordingly, the motion to dismiss the unjust enrichment claim, which the court construes as a quasi-contract claim seeking restitution, is denied.

### IV. CONCLUSION

For the foregoing reasons, RB Health's motion to dismiss the FAC is denied. RB Health shall file an answer by May 2, 2023.

**IT IS SO ORDERED.**

Dated: April 11, 2023



Donna M. Ryu
Chief Magistrate Judge

---

[3] On reply, RB Health argues that it did not yield higher profits by marketing and advertising the children's product as specially formulated for children, citing Hunt's statement that RB Health sells the products at the same price to retailers. Reply 10 n.4. This raises a factual issue that is inappropriate to resolve on a Rule 12(b)(6) motion to dismiss.